HONORABLE RONALD LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TONY S. and CAROL HENDERSON,<br><br>          Plaintiffs,<br><br>     v.<br><br>GMAC MORTGAGE CORPORATION; and<br>FIRST MORTGAGE LOAN SERVICING,<br><br>          Defendants. | Case No. 05-cv-05781<br><br>GMACM'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR:**<br>**FEBRUARY 29, 2008** |

## I.  MOTION

Pursuant to Fed. R. Civ. P. 56, defendants GMAC Mortgage Corporation and First Mortgage Loan Servicing (collectively "GMACM") move this court for an order granting summary judgment dismissing Tony and Carol Henderson's claims against GMACM for breach of contract, emotional distress damages, wrongful foreclosure, violations of the Truth in Lending Act, the Fair Credit Reporting Act and Washington's Consumer Protection Act.

## II.  BACKGROUND AND FACTS

On November 18, 2002, plaintiffs Tony and Carol Henderson (collectively referred to herein as "Henderson" or "the Hendersons") entered into a loan agreement with Greater Acceptance Mortgage Corporation ("Greater Acceptance").  The loan was memorialized by a Note (the "Note") with a principal balance of $77,000.00.[1]  The Note was secured by a Deed of

---

[1] Affidavit of Scott Zeitz at ¶2, Exhibit A ("Note").

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 1

Trust that described certain real property commonly known as 111 Oklahoma Road, Cook, Washington.[2]  In addition to other loan documents and disclosures, the Hendersons also signed a Federal Truth in Lending Disclosure Statement, a Notice of Right to Cancel, and a HUD -1 Settlement Statement.[3]

On November 25, 2002, GMACM completed its acquisition of the Hendersons' loan from Greater Acceptance by way of purchase and assignment.[4]  This assignment is evidenced by a Corporate Assignment of the Deed of Trust.[5]  GMACM paid Greater Acceptance to acquire the loan.[6]  Prior to completing the purchase and assignment, GMACM reviewed the Hendersons' loan documents and the required Truth in Lending disclosures and determined that they were accurate.[7]

The Hendersons made on time payments for approximately a year and a half.  Payments were due on the first day of each month.[8]  They then failed to make a payment in August 2004.[9]  In his deposition, Mr. Henderson testified that they were unable to make their August payment because he had started a new business and that business was slow starting out.[10]  Rather than calling GMACM to let it know of their financial hardship, the Hendersons claim to have started accumulating payments to get caught up.[11]  Once they had the funds necessary to catch the account up, Mr. Henderson testified he called GMACM and made an arrangement to bring the account current:

---

[2] Affidavit of Scott Zeitz at ¶3, Exhibit B ("Deed of Trust").
[3] Affidavit of Scott Zeitz at ¶3, Exhibit C ("signed Notice of Right to Cancel").
[4] Affidavit of Scott Zeitz at ¶4.
[5] Affidavit of Scott Zeitz at ¶4, Exhibit D ("Corporate Assignment").
[6] Affidavit of Scott Zeitz at ¶5.
[7] Affidavit of Scott Zeitz at ¶5.
[8] Affidavit of Scott Zeitz at ¶6.
[9] Affidavit of Scott Zeitz at ¶6.
[10] Deposition of T. Henderson at p. 47, lines 20-24 (Excerpts from the Deposition of Tony Henderson are attached to the Declaration of Erin M. Stines at Exhibit A).

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 2

> …we were just accumulating what we could in the bank to get caught up.  And then I called them and made the arrangements to get caught up and started to get caught up because I was doing real well at the time.[12]

Mr. Henderson conceded that at that point they were two months behind in payments as they had not made their August or September payments and their October payment would be due on October 1, 2004.[13]

GMACM account notes reflect GMACM, not Mr. Henderson, initiated a call on September 14, 2004, to the Hendersons to inquire about the past due amounts.[14]  In the call, Mr. Henderson promised to bring the account current within one week.[15]  The contemporaneous account note on September 14, 2004, reflects Mr. Henderson's promise:

> MR STATED THAT WILL HAVE BOTH PMNTS MAILED WEEK RFD HAS PERSONAL PROBLEMS 09/14/04 22:45:48 PP

Whenever a borrower promises to make a payment by a certain date, GMACM will complete a promise to pay on the system, like the one entered on the Hendersons' account.[16]  Noting the account serves the purpose of tracking the promise made, and bypasses collection calls between the time the promise is made and the date of the anticipated receipt.[17]  If a borrower subsequently fails to remit the funds by the promised date, a promise broken note writes to the system and normal servicing and collection activity resumes.[18]

The Hendersons broke their promise and failed to remit full payment within the time frame promised.  The account was noted "PROMISE BROKEN" on September 24, 2005.[19]  On October 1, 2004, the date the October payment was due, GMACM again called the Hendersons

---

[11] Deposition of T. Henderson at p. 48, lines 8-14.
[12] Deposition of T. Henderson at p. 48, lines 8-14.
[13] Deposition of T. Henderson at p. 48, lines 18-24.
[14] Affidavit of Scott Zeitz at ¶7.
[15] Affidavit of Scott Zeitz at ¶7, Exhibit E ("GMACM Contemporaneous Account Notes").
[16] Affidavit of Scott Zeitz at ¶8, Exhibit E.
[17] Affidavit of Scott Zeitz at ¶8.
[18] Affidavit of Scott Zeitz at ¶8.
[19] Affidavit of Scott Zeitz at ¶9.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 3

to discuss repayment options but the Hendersons did not answer the call.[20]  On October 4, 2004, GMACM called again and the Hendersons hung up on GMACM.[21]  By October 5, 2007, when GMACM had not received payments as promised and were unable to contact the Hendersons, GMAMC noted the account "RESTRICTING ACCOUNT TO TAD OR UNTIL ARRANGEMENTS" which means they would not accept anything less than the total amount due.[22]  GMACM continued, without success, to attempt to contact the Hendersons to discuss repayment.[23]

The Hendersons contend in their complaint that they promised to make three payments in thirty days and that they mailed the first payment on October 18, 2004, and the other on October 19, 2004.[24]  They claim that they would have sent the third payment within the three week time frame but the first two were returned before they put the third payment in the mail.[25]

GMACM records reflect that the Hendersons did send in two money orders to GMACM each in the amount of $915.25.[26]  Each money order was equal to one monthly payment.[27]  However, as each payment was received after the promised time frame and the checks were insufficient to bring the account current, the checks were individually returned to the Hendersons on October 22, 2004, and October 27, 2004. Along with each of the checks GMACM sent a letter advising:

> This represents one of three installments due at this time.  Your account is due for 08/01/04.  There may be alternatives available to help you resolve the delinquency on your home.  Please complete the enclosed financial form and return it to our office for call 800-850-4622.[28]

---

[20] Affidavit of Scott Zeitz at ¶10, Exhibit E.
[21] Affidavit of Scott Zeitz at ¶10, Exhibit E.
[22] Affidavit of Scott Zeitz at ¶11, Exhibit E.
[23] Affidavit of Scott Zeitz at ¶11, Exhibit E.
[24] Complaint p. 4, ¶3.6.
[25] Complaint p. 4, ¶3.6.
[26] Affidavit of Scott Zeitz at ¶12.
[27] Affidavit of Scott Zeitz at ¶12.
[28] Affidavit of Scott Zeitz at ¶12, Exhibits F and G ("GMACM letters dated October 22, 2004 and October 27, 2004").

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 4

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

Despite the Hendersons' failure to keep their promise, GMACM continued to reach out to the Hendersons in an attempt to discuss repayment.  The last date GMACM attempted to contact the Hendersons directly for this purpose was on December 15, 2004.[29]  On December 15, 2004, the Hendersons did not answer the phone and GMACM left a message.  GMACM's call was not returned.  Despite GMACM's contemporaneous account notes, Mr. Henderson claims they "never got any phone calls from them at all."[30]

GMACM ultimately initiated foreclosure and a sale date was set for April 29, 2005.[31] On April 4, 2005, GMACM received a letter from the Henderson's attempting to "rescind the transaction."[32]  Despite the allegation in the complaint that GMACM did not respond to this letter, GMACM did respond by letter dated April 6, 2005, stating that the Hendersons' right to rescind "expired midnight of November 21, 2002."[33]  On April 27, 2005, two days before the foreclosure sale, the Hendersons filed for bankruptcy.  On October 13, 2005, the Hendersons filed this lawsuit in Skamania County Superior Court.

The matter was later removed to Federal Court on December 2, 2005.  By this court's order dated October 27, 2006, the case was stayed due to the bankruptcy. On November 6, 2006, the bankruptcy court entered an Order allowing the bankruptcy trustee to abandon any interest in the subject property and an order lifting the stay was entered November 11, 2006.

The Hendersons make a variety of claims in this lawsuit: 1) breach of contract; 2) damages for emotional distress; 3) illegal foreclosure; 4) violations of the Truth in Lending Act; 5) violations of the Fair Credit Reporting Act; and 6) a violation of the Consumer Protection Act.

---

[29] Affidavit of Scott Zeitz at ¶13.
[30] Deposition of T. Henderson at p. 49, lines 3-11.
[31] Affidavit of Scott Zeitz at ¶15.
[32] Affidavit of Scott Zeitz at ¶14.
[33] Affidavit of Scott Zeitz at ¶14, Exhibit H ("GMACM letter dated April 6, 2005, responding to rescission request."

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 5

Allegations in the Hendersons' complaint are inconsistent with their deposition testimony.  For example, in their complaint, the Hendersons allege they promised GMACM to make up three payments in "thirty days" but in answers to discovery and in his deposition, Mr. Henderson claims the promise was to make up payments in "3 weeks" from the date of the call.[34]  The Hendersons allege in their complaint that they refinanced their loan with Greater Acceptance.  However, at this deposition, Mr. Henderson testified they had settled with GMAC because "we thought they were stable and the rates were -- they were reasonable."[35]  In their complaint, they allege that the two payments were sent on different days, October 18, 2004 and October 19, 2004, but at his deposition Mr. Henderson alleges he mailed the "two payments the same day."[36]  In their complaint they allege GMACM violated the FCRA by reporting "negative marks against the creditors."  However, when asked in their depositions about credit reports, Mrs. Henderson stated she had never seen a credit report and Mr. Henderson stated "I -- I've never looked at it prior to all of this" and further stated he had never disputed the reporting with any credit bureau.[37]

The Hendersons' claims are likewise inconsistent with claims they made before the bankruptcy court.  While in bankruptcy, the Hendersons objected to the bankruptcy trustee's motion to sell the property by arguing because "[t]he Debtors have been pre-approved for a refinance; there, there should be no chapter 7."[38]  The Hendersons claim in this lawsuit they have been denied loans because of their problems with GMACM and have suffered actual damages as a result of not being able to get a loan.[39]

---

[34] Deposition of T. Henderson at p. 50-51, lines 19-10; see also Stines Declaration Exhibit B, Plaintiffs' Responses to Defendant's First Interrogatories and Requests for Production of Documents to Plaintiff Tony Henderson at p. 17-18.
[35] Deposition of T. Henderson at p. 15, lines 17-22.
[36] Complaint p. 4 at ¶3.6; see also Deposition of T. Henderson at p. 50, lines 9-11.
[37] Deposition of C. Henderson at p.23 lines 10-17 (Excerpts from the Deposition of Carol Henderson are attached to the Stines Declaration at Exhibit C); see also Deposition of T. Henderson at pp. 78-79, lines 25-13 and pp. 108-109 lines 10-3.
[38] Stines Declaration Exhibit D, Objection to Trustee's Motion to Sell Property, p. 2 at ¶3.
[39] Deposition of T. Henderson at pp. 74-77.

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

The Hendersons rely on the "expert opinion" of Mr. Henderson's brother TJ Henderson to support their TILA claims. TJ Henderson claims to be the "primary Auditor for Co3m, Premier Mortgage 1 Auditing, Consumer Guardian and Advocates for Justice."[40]    TJ Henderson has never testified as an expert at trial or in a deposition and despite having never obtained a college degree or attended law school claims to have served as a "Counselor of Law" in a DUI matter in the District Court of Skamania County and at a hearing in a juvenile matter in Klickitat County Superior Court.[41]   He specifically states that "Judge Ronald Rainer took him under his wing and allowed TJ to practice law within his Court."  TJ Henderson is not a lawyer and he is not qualified as an expert.  Irregardless, any "expert opinion" of TJ Henderson is irrelevant as the facts of this case do not support a TILA violation.

The Hendersons' claims of emotional distress are likewise unsupported.  First, in discovery requests, neither Tony nor Carol Henderson identifies any medical expert they anticipate calling at trial.  And when asked to describe each and every item of damage they claim was caused by GMACM the Hendersons responded:

> Because of this, the Plaintiffs had to initiate legal action to stop the foreclosure against their home of more than 13 years, which forced the Plaintiffs to undergo additional financial and emotional distress. [42]

The Hendersons attach pages of Mr. Henderson's medical records to their responses. The records do not contain a medical *diagnosis* of emotional distress.  The records do suggest that Mr. Henderson suffers stomach problems related to Gastroesophageal Reflux Disease and was prescribed Prilosec for this problem.[43]   No information supporting Carol Henderson's claim for emotional distress is included.

---

[40] Stines Declaration Exhibit E, TJ Henderson's Answers and Objections to Defendant's Interrogatories and Requests for Production to Plaintiffs Concerning Plaintiffs' Expert TJ Henderson, p. 8.

[41] Stines Declaration Exhibit E, TJ Henderson's Answers and Objections to Defendant's Interrogatories and Requests for Production to Plaintiffs Concerning Plaintiffs' Expert TJ Henderson, pp. 3-6.

[42] Stines Declaration Exhibit B, Plaintiffs' Responses to Defendant's First Interrogatories and Requests for Production of Documents to Plaintiff Tony Henderson at p. 16.

[43] Stines Declaration Exhibit B, medical records attached to Plaintiffs' Responses to Defendant's First Interrogatories and Requests for Production of Documents to Plaintiff Tony Henderson were produced unnumbered and attached to the back of the answers; See also Stines Declaration Exhibit F, page printed from

As there is no issue of material fact for trial GMACM is entitled to an order dismissing the Henderson's lawsuit in its entirety.

### III.  STATEMENT OF ISSUES

1.      Have the Hendersons failed to establish a breach of contract claim where Mr. Henderson's promise to pay did not form the basis of an enforceable contract and the Hendersons failed to keep their promise to GMACM?

2.      Have the Hendersons failed to establish a claim for emotional distress damages where they have not provided any medical diagnosis of an emotional disorder?

3.      Have the Hendersons failed to establish a claim for "illegal foreclosure" where there was no foreclosure and they cannot establish any damages resulting from an attempted foreclosure?

4.      Have the Hendersons failed to establish a claim under the Truth in Lending Act (TILA) where GMACM was an assignee of the Hendersons' loan, where there are no apparent defects on the face of the disclosures and loan documents, and where GMACM timely responded to the Hendersons' Notice of Rescission?

5.      Have the Hendersons failed to establish a claim under the Fair Credit Reporting Act (FCRA) where the Hendersons failed to follow FCRA Requirements?

6.      Have the Hendersons failed to establish a claim under Washington's Consumer Protection Act (CPA) where the Hendersons cannot prove any element of a CPA claim?

### IV.  EVIDENCE RELIED UPON

The evidence supporting this motion consists of the following:

1.      The Declaration of Erin M. Stines and attached exhibits;

2.      The Affidavit of Scott Zeitz and attached exhibits; and

3.      The documents already on file with the Court.

---

Prilosec website (according to the Prilosec web site, Prilosec is an over the counter medication used to treat "frequent heartburn").

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 8

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

### V.  LEGAL AUTHORITY

The law of summary judgment under Federal Rule of Civil Procedure 56 is well settled and familiar.   FRCP 56(c) provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."   See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A genuine issue of material fact does not exist where there is insufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In order to defeat a motion for summary judgment, the non-moving party bears the burden of making more than conclusory allegations, speculation or argumentative assertions that material facts are in dispute.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

Summary judgment is appropriate here as there are no material facts in dispute and GMACM is entitled to judgment as a matter of law.

### A.    The Hendersons' Breach of Contract Claim Should be Dismissed as Mr. Henderson's Unilateral Promise to Pay did not Form the Basis of a Contract and the Hendersons Failed to Keep their Promise to GMACM

The Hendersons seek damages for breach of an alleged contract they claim was formed in a telephone call with GMACM.  However, no separate contract was formed and even if the court could find a contract was formed Mr. Henderson breached the contract in failing to bring the account current in one week.

An action for damages for a breach of contract must be based on a valid contract. *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516, 5 P.3d 722 (2000). The burden of proving the existence of a contract is on the party asserting its existence. *Siekawitch v. Wash. Beef Producers, Inc.*, 58 Wn. App. 454, 461, 793 P.2d 994 (1990). The elements of a

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

contract are the subject matter, the parties, the promise, the terms and conditions, and the price or consideration. *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 31, 959 P.2d 1104 (1998). Neither the performance of a preexisting duty nor the promise to perform will constitute consideration.  See 1A A. Corbin, *Contracts* Sec. 181, at 138 (1963).  Whether the essential elements of a contract are present is a question of law. See, e.g.,*Underwood v. Sterner*, 63 Wn.2d 360, 364, 387 P.2d 366 (1963). And the existence of a meeting of the minds is a question of fact. *Sea-Van*, 125 Wn.2d at 126.

Here, the essential elements of a contract are missing. The Hendersons were already obligated under the Note and Deed of Trust to make on time monthly payments to GMACM. The parties neither negotiated a separate agreement, nor did either party provide separate consideration.  Mr. Henderson concedes that in the call he simply advised he would bring his account current within a certain time frame.  GMACM acknowledged the advice and tracked this information in the computer.  No contract was formed.  The Hendersons were already under an obligation under the Note and Deed of trust to make their payments on time to GMACM.

The Hendersons' two versions of events do not even make sense in light of their own admissions.  Version one, provided in the complaint is that the Hendersons would catch up the August, September and Octobers payment within "30 days" of the call.  The Hendersons do not state in the complaint or elsewhere the date Mr. Henderson had the conversation with GMACM.  However, contemporaneous account notes maintained by GMACM document that the call took place on September 14, 2004.  Thus, according to this version of events the Hendersons would have had until October 14, 2004, to bring the account current.  However, the Hendersons admit in their complaint that they did not begin mailing payments until October 18, 2004, and October 19, 2004, several days after the deadline to bring the account current.

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

The Hendersons' other version of events, the version explained in discovery and at Mr. Henderson's deposition, that they would make the payments up in three weeks, makes even less sense.   Under this scenario, all three payments were due by October 5, 2004, approximately two weeks before they admit to having sent in payments.

According to GMACM's contemporaneous account notes which document the Hendersons' promise to bring the account current within one week – by September 24, 2004. By the Hendersons' own admissions, they did not mail the payments until October 18, 2004, and October 19, 2004.   As those two payments were received after the promised time frame and were insufficient to bring the account current, the payments were returned to the Hendersons by letters dated October 22, 2004, and October 27, 2004.

As no separate contract was formed the Hendersons' breach of contract claim should be dismissed.   Even if the court could find a contract was formed, the Hendersons, by their own admissions, concede that they breached that contract. This claim should be dismissed.

**B.     The Hendersons' Claim for Emotional Distress Damages Should be Dismissed Because Emotional Distress Damages Cannot be Recovered Absent a Medical Diagnosis of an Emotional Disorder**

The law regarding recovery of emotional distress damages pursuant to negligent infliction of emotional distress is settled.   The court in *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998), held that to satisfy the "objective symptomatology requirement" established in *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976), a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence.

The *Hegel* court further held that in order for symptoms such as nightmares, sleep disorders, intrusive memories, fear and anger to be sufficient for recovery under such a theory, they must constitute a diagnosable emotional disorder.   *Hunsley*, 87 Wn.2d at 424.   The court noted that examples of such emotional distress would include neuroses, psychoses, chronic

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

1    depression, phobia, shock, posttraumatic stress disorder, or another disabling mental condition.

2    *Hunsley*, 87 Wn.2d at 424.

3        In the present case, Tony and Carol Henderson do not, and did not suffer from,

4    diagnosable emotional disorders.  Mrs. Henderson provides no medical information and Mr.

5    Henderson's medical records discussing treatment for Gastroesophageal Reflux Disease are

6    insufficient to satisfy the "objective symptomatology requirement" requirement established in

7    *Hunsley*.  As the Hendersons fail to provide any evidence of a diagnosable emotional disorder

8    these claims should be dismissed.

9

10       **C.    The Hendersons' "Illegal Foreclosure" Claim Should be Dismissed as
               GMACM Never Foreclosed and they Cannot Establish any Damages
11             Resulting from an Attempted Foreclosure**

12       GMACM never completed a foreclosure of the Hendersons' property.  For this reason

13   alone the Hendersons' "illegal foreclosure" claim should be dismissed.

14       RCW 61.24.040 sets out Washington's nonjudicial foreclosure procedure.  The three

15   goals of the Washington deed of trust act are: (1) that the nonjudicial foreclosure process

16   should be efficient and inexpensive, (2) that the process should result in interested parties

17   having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process

18   should promote stability of land titles. *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683

19   (1985).

20       As GMACM never completed a foreclosure the Hendersons' only claim here could be

21   that GMACM *attempted* to wrongfully foreclose.  However, as already explained, at the point

22   GMACM initiated foreclosure, the Hendersons had fallen at least three months behind in

23   payments, the Hendersons had failed to keep their promise to catch the account up and they

24   regularly ignored GMACM's calls or hung up on GMACM.  Despite GMACM's attempts, it

25   could not reach a resolution with the Hendersons.  It was only after months of attempting to

     make arrangements with the Hendersons that GMACM initiated foreclosure.

---

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 12

Furthermore, as the parties' relationship was governed by contract – namely a Note and Deed of Trust – any tort claim based on that loss is precluded under the economic loss rule. *Alejandre v. Bull*, 159 Wn. 2d 674, 678 (2007).  The economic loss rule applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief. *Alejandre*, 159 Wn. 2d at 681.  The rule "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract" because "tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.'" *Factory Mkt., Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387, 395 (E.D. Pa. 1997).

Furthermore, the Hendersons admit their bankruptcy pleadings that they have not been damaged by GMACM's attempted foreclosure.  In their objection to the bankruptcy trustee's motion to sell the property they admit that because "[t]he Debtors have been pre-approved for a refinance; there, there should be no chapter 7."  This statement undermines statements in the discovery responses and deposition testimony that they cannot refinance their loan because of the problems on their account.[44]  By their own admission, the Hendersons were not damaged.

For these reasons, the "illegal foreclosure" claim should be dismissed.

**D.    The Hendersons' TILA Claims Should be Dismissed Because as an Assignee of the Hendersons' Loan GMACM Has No Liability When There are No Apparent Defects on the Face of the Disclosures, the All Required Disclosures were Provided, and GMACM Timely Responded to the Hendersons' Notice of Rescission**

1.    <u>GMACM is Not Liable For Damages Under TILA Because There are No Defects Apparent on the Face of the Loan Documents</u>

As a general rule, an assignee of a mortgage is liable for damages only if the violation is apparent on the face of the disclosure statement and the other documents assigned:

§ 1641. Liability of assignees

---

[44] Stines Declaration Exhibit D, Hendersons' Objection to Trustee's Motion to Sell Property, p. 2 at ¶3; see also Deposition of T. Henderson at pp. 74-77.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 13

1

2

3

4

5

6

7

8

> (a) Prerequisites. Except as otherwise specifically provided in this title [15 USCS §§ 1601 et seq.], any civil action for a violation of this title [15 USCS §§ 1601 et seq.] or proceeding under section 108 [15 USCS § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor <u>only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement</u>, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this title [15 USCS §§ 1601 et seq.].

9

15 USCS § 1641(a) (emphasis added).

10

11

12

13

14

15

16

17

18

Several circuit courts have held, that "'apparent on the face' means exactly that--for an assignee to be liable under TILA, the violation must be apparent on the face of the assigned disclosure documents." *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 198 (3rd Cir. 2000). 15 USC § 1641(a) does not impose a duty of additional inquiry on assignees; only violations that a reasonable person can spot on the face of a disclosure statement or other assigned documents will make assignee liable under TILA. *Taylor v Quality Hyundai* (1998, CA7 Ill) 150 F3d 689, rehearing denied (1998, CA7 Ill) 1998 US App LEXIS 21348; 15 USCS § 1641.

19

20

21

22

23

24

25

Recent court decisions make it clear that the recent amendments to TILA have *narrowed* the scope of assignee liability. Compare 15 U.S.C. § 1641 (1979), with section 1641(a) (1980); *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 200 (3rd Cir. 2000) (citing the legislative history at S.Rep. No. 96-73, at 2-3, 96th Cong. 1st Sess. (1979), reprinted in 1980 U.S.Code Cong. & Admin.News 280, 281). It was this 1980 amendment that limited the liability of voluntary assignees to violations "apparent on the face of the disclosure statement."

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

15 U.S.C. § 1641(a); *Phillips v. Lithia Motors, Inc.*, 2006 U.S. Dist. LEXIS 25607, 51-52 (D. Or. 2006).

In a closed-end credit transaction, the five material disclosures that must be given are the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule.  12 CFR 226.23.  Prior to completing the purchase and assignment of the Henderson loan, GMACM reviewed the material disclosures and loan documents and determined that they were accurate and there were no defects apparent on the face of these documents.[45]

There is no evidence to suggest the loan file was defective or that the defects were apparent on the face of the loan documents.  This claim should be dismissed.

2.   The Hendersons Reviewed, Signed and Received a Notice of Right to Rescind Their Loan

The Hendersons' Complaint specifically alleges they only received "one copy of the notice of right to cancel, with both names attached at the bottom and no dates filled in."  The Hendersons cite the disclosure requirements outlined in the TILA, 15 USC 1601 *et seq*. The Hendersons do not cite the notice requirements outlined in 12 C.F.R Sec. 226.23(b) which also governs a lender's obligation to provide borrowers with a notice of their right to cancel certain loans. 12 C.F.R Sec. 226.23(b)(1) specifically provides,

> Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)).  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

---

[45] Affidavit of Scott Zeitz at ¶3, Exhibit C.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 15

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

The Henderson's claim under 15 U.S.C 1635(a) and 12 C.F.R Sec. 226. 23(b)(1) lacks merit because the Hendersons reviewed and signed a Notice that included the date the rescission period expires. The Notice clearly states as follows,

If you cancel by mail or telegram, you must send a notice no later than midnight of 11-21-02 (or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.[46]

They signed a copy of the Notice on November 18, 2002, and in doing so, acknowledged that they had received two copies of the Notice. Plaintiffs' claim under 15 USC 1635(a) and 12 CFR Sec. 226. 23(b)(1)(v) should be dismissed.  Further, they concede in their depositions that they received and signed the Notice at closing.[47]

---

[46] Affidavit of Scott Zeitz at ¶3, Exhibit C.

[47] Deposition of C. Henderson at p. 39, lines 18-21:
  Q.  And did you receive this document the day you signed all the paperwork to get the loan?
  A.  Did we receive this?
  Q.  Yes.
Deposition of T. Henderson at p. 41-42 lines 10-2:
  Q.  And we established earlier that it was likely, in fact, November 18th, 2002 that you signed these documents.  Does that date appear under --
  A.  It sure does.
  Q.  -- paragraph 1?
  A.  (Witness nods head.)
  Q.  And right above the language, I wish to cancel, there's a paragraph there that says, If you cancel by mail or telegram, you must send a notice no later than midnight of November 21, 2002. Do you see that?
  A.  Yes.
  Q.  And is that your signature at the bottom of the page?
  A.  It sure looks like it.
  Q.  And you're not claiming that someone else signed your name here?
  A.  Nope.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 16

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354

To the extent they claim that after signing the Notice they were not provided signed copies of the Notice, there is no such requirement under 15 U.S.C 1635(a) or 12 C.F.R Sec. 226.23(b) that GMACM return *signed* copies of the Notice once Notice was provided. Such a technical requirement does not exist under TILA.

Even if the Hendersons could establish some technical violation of TILA technical violations do not entitle debtors to relief under 15 U.S.C § 1635, as nondisclosure must be material. 15 U.S.C 1635(a). For example, even when borrowers receive the wrong form, notice is not defective as long as the form informs borrowers of their right to cancel within a three-day period. *Mills v Equicredit Corp.,* 294 F Supp. 2d 903 (2003). As the Hendersons concede they received the Notice and that they were informed of their right to cancel they cannot establish a TILA violation.

Furthermore, generally, a borrower's signature on a Notice of Right to Rescind creates a rebuttable presumption that the notices were given.[48]  However, in the case of an assignee, such as GMACM who acquired its interest in the loan by virtue of an assignment from Greater Acceptance, such signature is *conclusive* proof the notices were given.

> Except as provided in section 125(c) [15 USC 1635(c)], in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this title [15 USCS §§ 1601 et seq.] shall be conclusive proof of the delivery thereof and, except as provided in subsection (a), of compliance with this chapter [15 USC §§ 1631 et seq.]. This section does not affect the rights of the obligor in any action against the original creditor.

15 USC § 1641(b) (emphasis added).

---

[48] "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does not more than create a rebuttable presumption of delivery thereof." 15 USC 1635(c).

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 17

This claim should be dismissed because the Hendersons received a Notice of Right to Rescind that includes the date the rescission period expired.   Further, their signatures are conclusive proof this requirement was met as to GMACM.

Any attempted claim regarding GMACM's alleged failure to respond to the Henderson's notice of rescission received by GMACM on April 4, 2006, is likewise without merit.   The Hendersons' right to rescind expired on November 21, 2002.   The Hendersons did not seek to rescind the transaction until approximately three years after the rescission deadline expired. Despite their allegations to the contrary, GMACM promptly supplied a written response two days after the letter requesting rescission was received stating that the rescission was not timely.   This claim should be dismissed.

**E.     The Hendersons' Fair Credit Reporting Act Claim Should be Dismissed Because the Hendersons Failed to Follow Fair Credit Reporting Act Requirements**

The Hendersons' Complaint alleges GMACM negligently and willfully violated the requirements of the Fair Credit Reporting Act ("FCRA") by reporting "negative marks against the creditors."

Under the FCRA, the duties of a furnisher of information are set forth in 15 U.S.C. §1681s-2.[49]   The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s-2 (a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information. Section 1681s-2(a) provides in relevant part as follows:

> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.  A

---

[49] GMACM concedes it is a "furnisher of information" within the definition provided under the FCRA.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 18

person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.  A person who . . . has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

15 U.S.C. §§ 1681s-2(a)(1) and (2).

However it is clear there is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials. 15 U.S.C. § 1681s-2(d); *Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1059 (9th Cir. 2002).

The statute explicitly excludes a private right of action for furnishing inaccurate information, and here GMACM is not the government body charged with enforcing violations of 15 U.S.C. §§ 1681s-2(a). For these reasons, even if GMACM did furnish inaccurate information to credit reporting agencies, the Hendersons cannot successfully allege causes of actions against GMACM under 15 U.S.C. §§ 1681s-2(a) of the FCRA.

A furnisher of information has specific duties only once the furnisher has been notified by a credit reporting agency that a consumer is disputing information on his or her credit report.  15 U.S.C. § 1681s-2(b).

The procedure for a consumer who disputes information is set forth in 15 U.S.C. §1681i.  The consumer must notify the credit reporting agency directly of the dispute, and the agency is then required to conduct a reasonable investigation, including notifying the furnisher of information about the dispute.  15 U.S.C. §1681i(a)(1), (2).  Once the furnisher of information has received notice of the dispute from the credit reporting agency, the

furnisher must then conduct an investigation, review the information and provide a response to the credit reporting agency pursuant to 15 U.S.C. §1681s-2(b).  Accordingly, in order to impose liability on a furnisher of information to the credit reporting agencies, there must first be a dispute by the consumer.  15 U.S.C. § 1681(i).  Such notice is necessary to trigger GMACM's duties under 15 U.S.C. §§ 1681s-2(b).

Advising the furnisher of information directly, without also advising the credit reporting agencies of a dispute, is insufficient to establish a cause of action under the FCRA.[50]  In *Peasley v. Verizon Wireless (VAW) LLC*, 364 F.Supp.2d 1198 (S.D. Cal. 2005), the court dismissed plaintiff's FCRA claim for failure to state a claim upon which relief could be granted because in order for the duty of a furnisher of information to be triggered, the furnisher must first have received notice of the dispute from the credit reporting agency, not directly from the consumer as was the situation in *Peasley*.

To the extent that the Hendersons allege a FCRA violation for reporting late payments, they are first required to establish that they disputed the reporting with the credit bureaus directly.  The Hendersons cannot satisfy this requirement as they concede they never notified a credit reporting agency of their dispute.[51] The FCRA should be dismissed.

---

[50] The FCRA notice requirements make sense considering credit reporting is not within the complete control of the furnisher.  Credit reporting agencies can make errors in reporting.  Congress has explained that the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer."  15 U.S.C. § 1681(b).  Thus, credit reporting agencies have their own duty to investigate disputes.  *See* 15 U.S.C. §1681i.  Only once the agency has been notified of a dispute can it be required to conduct its own "reasonable investigation, including notifying the furnisher of the information about the dispute."  15 U.S.C. §1681i(a)(1), (2).  Unless the agency is notified of a dispute it cannot take appropriate action to investigate or correct its own reporting.  GMACM is not responsible for the mistaken reporting of the credit reporting agencies.

[51] Deposition of C. Henderson at p.23 lines 10-17; see also Deposition of T. Henderson at pp. 78-79, lines 25-13 and pp. 108-109 lines 10-3.

GMACM'S MOTION FOR SUMMARY JUDGMENT  - 20

**F.     The Hendersons' Consumer Protection Act Claim Should Be Dismissed Because the Hendersons Cannot Prove any Element of a Consumer Protection Act Claim**

The Hendersons have failed to allege any violation of the Consumer Protection Act ("CPA") and their claim should dismiss as a matter of law.

To prevail on a CPA claim, the Hendersons must prove: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986)).

In their complaint, the Hendersons allege GMACM has "engaged in a pattern of unfair practices mentioned in the facts above."  The Hendersons do not cite any independent facts to support a CPA claim.  As the Hendersons have failed to establish any breach of contract or any violation of either TILA or the FCRA the Hendersons' cannot satisfy even the first element of a CPA violation much less the other four elements. As no unfair or deceptive act or practice exists summary judgment should be granted as to the Hendersons' CPA claim.

## VI. <u>CONCLUSION</u>

For all of the reasons above, GMACM respectfully requests that its motion for summary judgment be granted, and that all of the Hendersons' claims be dismissed.

Dated this 5th day of February, 2008.

BISHOP, WHITE, & MARSHALL, P.S.

/s/Erin M. Stines_____
Erin M. Stines, WSBA No. 31501
David A. Weibel, WSBA No. 24031
Attorneys for GMACM

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1300
SEATTLE, WASHINGTON 98101-1801
206/622.5306 FAX:206/622.0354