The Honorable Ronald B. Leighton, Judge

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| TONY S. and CAROL HENDERSON,<br>            Plaintiffs, | No. 05-cv-05781-RBL |
| vs. | PLAINTIFFS' MEMORANDUM<br>IN RESPONSE TO DEFENDANTS'<br>MOTION FOR SUMAMRY JUDGMENT |
| GMAC MORTGAGE CORPORATION; and<br>FIRST MORTGAGE LOAN SEVICING,<br>            Defendants. | |

COME NOW the Plaintiffs by and through Counsel and

Respond to the Defendants' Motion For Summary Judgment.


I.  INTRODUCTION

In this case the Plaintiffs, Tony S. and Carol Henderson, Husband and Wife (the

"Hendersons"), filed claims against the Defendants under the Truth in Lending Act ("TILA"),

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

the State of Washington Consumer Protection Act, Breach of Contract, Illegal Foreclosure, Emotional Distress, and the Fair Credit Reporting Act.

## II.  STANDARD FOR REVIEW

When reviewing a motion for summary judgment, the court is required to "view the evidence and draw all reasonable inferences there from in the light most favorable to the non-moving party." Littie v. BP Exploration & Oil Ca., 265 F.3d 357, 361 (6th Cir.2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the instant case, the Plaintiffs have come forward with the opposing affidavits  Tony S. Henderson, Carol Henderson, and TJ Henderson, which serves to create a genuine issue of fact sufficient to overcome summary judgment.

## III. GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE

**A. Breach of Contract Claims:**

The Plaintiff makes claims under of Breach of Contract and the Defendants dispute the claims.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 2

GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101

The Hendersons agreed over the phone to make three payments. The Hendersons made 2 of the three payments agreed upon with time left to make the third, except for GMAC's return of the first two payments. GMAC makes claim that the contract period was for only 1 week and the Henderson makes claim that it was for 3 weeks.

## B. Emotional Distress:

The Plaintiff makes claims of Emotional Distress and the Defendants dispute the claims on legal sufficiency grounds.

Tony Henderson suffers from physical injury due to the negligent infliction of mental distress caused by the Defendants threat of foreclosure, when the Hendersons thought they had worked out a payments plan, which they met, except for GMAC's return of the first two payments.

## C. TILA Claims

The Plaintiff makes facial claims under the TILA and the Defendants dispute the claims as not being facial.

The Annual Percentage Rate (APR) on the Truth in Lending Disclosure Statement (TIL) is overstated by 0.2914%.

The Amount Financed is understated by $517.72. Carol Henderson did not receive her own TIL.

Neither Henderson received the proper number of copies of the Notice of Right to Cancel.

Neither Henderson received 1 each a copy of the Home Owners Equity Protection Act disclosures.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 3

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

The Hendersons rescinded the loan without a response from GMAC. If GMAC did respond they made to attempt to rebut the Henderson's rescission letter with creditable evidence to the contrary.

**D. Illegal Foreclosure**

The Plaintiff makes claims under illegal foreclosure cause of action and the Defendants dispute the claims.

Plaintiffs provided ample facts that should support a claim that the attempted wrongful foreclosure was initiated through deception and fraudulent promises that such collections would not take place if the Hendersons made certain payments, which they would have met but for GMAC's return of the first two payments.

**E. State Consumer Protection Act**

Plaintiffs' TILA violations result in parallel violations of the State of Washington Consumer Protection Act.

IV.  ARGUMENT

**A.     Breach of Contract.**

According the Plaintiffs, the Defendants ("GMAC" hereinafter) agreed to consider the Plaintiffs' payments current, and to abstain from going into collections or foreclosure, on condition that the Plaintiffs made three payments within a three-week period following the call. Affidavit of Tony S. Henderson at paragraphs 22, 23.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 4

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

GMAC in fact admits through Mr. Zeitz, that GMAC would bypass collection calls.  Affidavit of

Mr. Zeitz at paragraph 8.

GMAC argues that this created a unilateral contract.

   "A contract is unilateral when one party who makes a promise has received a consideration other than a promise to make the contract binding. A unilateral contract is also defined as one in which there is a promise on one side only, the consideration therefore being an act. . . .

   The term 'unilateral' has also been used to describe what is sometimes denominated a contract, but which in reality is merely an offer to contract, as, for example, a promise to pay one for services if he should perform them, the latter being under no obligation to perform such services. . . . Still another illustration is an agreement signed by an owner of property to pay a broker commissions in the event the broker finds a purchaser for the property or in the event of a sale by either the owner or the broker. After the act upon which the promise is based is performed, a valid contract comes into existence."

  Higgins v. Egbert,  28 Wn.2d 313, 317, 182 P.2d 58 (1947),  citing 12 Am. Jur. 506, Contracts, § 8 and See, also, Restatement, Contracts, § 12.

   Such a contract is characterized as being no more than a continuing offer, and subject to

revocation at any time. Herrin v. Scandinavian-American Bank, 65 Wash. 569, 118 Pac. 648;

Lasswell v. Anderson, 127 Wash. 591, 221 Pac. 300.

   "The distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of the one party does not become binding or enforceable until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather the giving of a promise by the one party for the promise of the other." Higgins  at 317-8.

   So by giving the Plaintiffs the assurances that it had given, GMAC and the Plaintiffs

created a bilateral contract.  Promises were given by each party to the other.

   The Plaintiffs were in the process of making all three payments within two weeks, when,

on October 23, 2004, GMAC returned their payments in violation of this contract.  Aff. Mr.

Henderson at ¶ 27, 28.

   According to the Plaintiffs, their first two payments were made within one week of the

date of the contract.  The latest-dated money order was October 19, 2004 (Aff. Mr. Henderson at

¶ 25, 26).  So assuming that October 19, 2004 was the last day of this week, the contract was made on October 12, 2004.

So two weeks from October 12, 2004, would have been October 26, 2004, which makes clear that all three payments would have been made within that three-week period, but for GMAC's return of the first two payments hence breaching the contract.

As to a pre-existing duty rule:  The Hendersons could have walked away from their home and the mortgage.  They chose in good faith to work with GMAC.  They agreed to accelerate three late payments, with late fees, within a three-week period.

This pre-existing duty principle, applied in <u>Harris v. Morgensen</u>, 31 W.2d 228, 244, 196 P.2d 317 (1948), is distinguishable, since the Tenant/Vendee expressed her desire to terminate the relationship between the parties.  <u>Id.</u> at 244.

The Plaintiffs clearly did not want to terminate their relationship with GMAC.  GMAC could have told them that collections will commence, rather than deliberately lead the Plaintiffs into believing that by making the three payments in three weeks would save their home from foreclosure collections.  GMAC could have told them the truth, that collection proceedings will take place regardless of the Plaintiffs' desire, and the Plaintiffs would have focused their time, energy and money into locating alternative options, such as refinancing.  The pre-existing duty should not bar the consideration that GMAC received, as inadequate under these limited circumstances.

**B.      Emotional Distress Damages.**

Plaintiff Mr. Henderson describes how he lost sleep and suffered from stomach agitation the caused him to be admitted three times during February, 2007, for abdominal pain.  Mr.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 6

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

Henderson had to take IV medication and pain medication, and was prescribed medication for his ulcer.  Aff. Mr. Henderson ¶40, 41.  These observations are corroborated by Mrs. Henderson, and would necessarily imply that the Doctors who treated Mr. Henderson are factual witnesses.

"The objective symptomatology requirement of Hunsley [Hunsley v. Giard, 87 Wn.2d 424, 553 P.2d 1096 (1976)] is not limited to purely physical manifestations such as gastrointestinal disorders, as defendants assert. The requirement is only that the manifestations be objective in nature. Depression, sleeplessness, loss of weight, and social and professional dysfunction impairment are all objective symptoms.". Lindsey v. Visitec, Inc., 804 F. Supp. 1340, 1342-43 (W.D. Wash.1992).

"The plaintiff who suffers mental distress has a cause of action; that is to say, the defendant has a duty to avoid the negligent infliction of mental distress. It is not necessary that there be any physical impact or the threat of an immediate physical invasion of the plaintiff's personal security." Hunsley at 435.

"The defendants in Hegel also challenge the sufficiency of the Hegels' objective symptoms of emotional distress. In order to recover for negligent infliction of emotional distress, a plaintiff's emotional response must be reasonable under the circumstances, and be corroborated by objective symptomology. Hunsley, 87 Wn.2d at 436. In their original interrogatory answers, the Hegels alleged they felt scared, angry, upset, suffered nightmares, and felt fear and panic. The trial court relied on Shoemaker v. St. Joseph Hosp. & Health Care Ctr., 56 Wn. App. 575, 784 P.2d 562 (1990) and held that these complaints were insufficient to satisfy Hunsley's objective symptomology requirement. In doing so, the trial court implicitly incorporated Shoemaker's rule that objective symptomology requires some sort of physical manifestation of the emotional distress.(fn3) We disagree." Hegel v. McMahon, 136 Wn.2d 122, 132-3, 960 P.2d 424 (1998).

GMAC seems to argue that the Plaintiffs need to present hard medical testimony at the summary judgment stage to survive to trial on this issue.  The Plaintiffs have provided ample evidence that Mr. Henderson suffered, to the point of having been admitted to a hospital and received treatment and medication for those symptoms.  GAMC admits that there were medical records that were received in evidence.  GMAC failed to depose these doctors.

But more importantly is the trouble with the burden of proof that GMAC argues that the Plaintiffs face at summary judgment:  The case authority cited by GMAC does not lead to the

GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101

legal conclusion that a plaintiff needs a medical doctor to give a diagnosis that certain symptoms are related to the emotional disorder.

## C.      Illegal Foreclosure Claim.

GMAC asserted in their argument that in an attempted wrongful foreclosure, the Plaintiffs did not follow through on the contract to make the late payments within a certain time frame.  This buttresses Plaintiffs' argument that GMAC frustrated Plaintiffs' attempts at making the late payments within the allotted time by returning the first two payments back to the Plaintiffs thus breaching the agreement that the Plaintiffs assert was reached with GMAC.

Although this may be a novel area, the ability of a creditor to frustrate a debtor's attempts at making up late payments under the pretense that the creditor is "working with" the debtor, when in fact the creditor intends all along to start collections, and does in fact start foreclosure proceedings, tends to demonstrate an unfair practice, fraud and deception.

Because this unfair practice, fraud and deception has nothing to do with the debtor's performance under the mortgage, the economic loss rule should not apply:  Alejandre v. Bull, 159 Wn.2d 674, 689, 153 P.3d 864 (2007) clearly indicates that a fraudulent concealment claim can be found pursued in light of the fact that the case involved a contract, since performance under the contract had nothing to do with fraudulent conduct.  So the economic loss rule is not as absolute as GMAC claims.

Unlike the case in Alejandre, the Plaintiffs provided ample facts that should support a claim that the attempted wrongful foreclosure was initiated through deception and fraudulent promises that such collections would not take place.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 8

*GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101*

**D.      TILA Claims.**

The Plaintiffs did not get two copies apiece of the notice of right to cancel (Aff. Mr. Henderson ¶15), and the one copy that they did receive, did not have the date written onto it as required (Aff. Mr. Henderson ¶13, 14, Plaintiffs' Exhibit B).

The Plaintiffs did not get one copy apiece of the loan closing papers (Aff. Mr. Henderson ¶16).

The Plaintiffs sent a Notice of Rescission to GMAC in March, 2005 (Aff. Mr. Henderson ¶34), and never received a response for the remainder of that year (Aff. Mr. Henderson ¶35). There is no indication that the Plaintiffs received a response to their Notice of Rescission from GMAC in any other year after 2005.

According to Plaintiffs' expert, TJ Henderson, several facial violations are apparent:

The Annual Percentage Rate (APR) on the Truth in Lending Disclosure Statement (TIL) is overstated by 0.2914%.  (Aff. TJ Henderson ¶8).

The Amount Financed is understated by $517.72 (Aff. TJ Henderson ¶9, 10).

Carol Henderson did not receive her own TIL (Aff. TJ Henderson ¶12).

Neither Plaintiff received 1 each a copy of the Home Owners Equity Protection Act disclosures (Aff. TJ Henderson ¶14).

Expert TJ Henderson also cited to additional violations in his Referenced Report:

No itemization of amount financed or disclosure telling the Plaintiffs that they are entitled to that disclosure in writing, as required under <u>12 CFR §226.18(c)</u>, within the time required under <u>12 CFR §226.17(b)</u> or 12 CFR §226.19(a) (Ref. Report Page 2 "Violation #1").

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 9

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

Disclosures under 15 USC §1639 and 12 CFR 226.32 (Home Owners Equity Protection Act) were not provided (Ref. Report Page 5 "Violation #5").

It is estimated that due to the breach by GAMC of the contract and the subsequent initiation of foreclosures and bankruptcy, the Plaintiffs' credit rating would have been harmed by as much as 5 points (Ref. Report Page 8 "Other Federal Violations").

TILA is essentially a disclosure statute strictly enforced against the lender and construed liberally in favor of borrowers.

The Federal Reserve Board has prescribed implementing regulations, known as Regulation Z. See 12 C.F.R. § 226. HOEPA (Home Owners' Equity Protection Act) amended TILA by providing additional disclosure obligations and substantive requirements for certain high-cost mortgages. See 15 U.S.C. §§ 1602(aa), 1639.

TILA imposes two different bases of liability for assignees. With respect to non-HOEPA loans "any civil action ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement...." 15 U.S.C. § 1641(a).   "For HOEPA loans, liability is not limited to violations apparent on the face of loan documents, ... but rather liability exists unless the assignee proves that a reasonable person exercising ordinary due diligence could not determine ... the itemization of the amount financed, and other disclosure of disbursements that the loan was a HOEPA loan, as detailed in section 1641(d)(1)." Cooper v. First Gov't Mortgage & Investors Corp., 238 F.Supp.2d 50, 55 (D.D.C.2002). "Courts have interpreted section 1641(d)(1)'s due diligence requirement as placing the burden on an assignee

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 10

GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101

to prove, by a preponderance of the evidence, that the assignee could not reasonably determine, could not determine, or did not know that the loan was a HOEPA loan." Cooper at 56.

Assignee Liability under 15 U.S.C. § 1641(a), states that an action may be brought against an assignee of a creditor if the violation is "apparent on the face of the disclosure statement."

15 USC § 1641, Liability of assignees, states impertinent part:

"SUBCHAPTER I - CONSUMER CREDIT COST DISCLOSURE
Part B - Credit Transactions
(a) Prerequisites
   Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.
   (b) Proof of compliance with statutory provisions
   Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.
   (c) Right of rescission by consumer unaffected
   Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.
   (d) Rights upon assignment of certain mortgages
   (1) In general
   Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title. The preceding sentence does not affect rights of a consumer under subsection (a), (b), or (c) of this section or any other provision of this subchapter."

GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101

*Emphasis added.*

The Plaintiffs claim that GMAC is liable as an assignee under <u>Section 1641(a)</u> for knowingly purchasing a loan that violates the disclosure provisions of TILA.  The Plaintiffs also claim that GMAC is liable for failing to properly respond to Plaintiffs' notice of rescission within 20 days, as required by <u>15 U .S.C. § 1635(b)</u> ("within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."). *See also* <u>Shepeard v. Quality Siding & Window Factory, Inc., 730 F.Supp. 1295, 1301 n. 8 (D.Del.1990)</u>. It should not matter whether the alleged violation was apparent on the face of disclosure documents, under <u>Section 1641(a)</u>, for failing to respond to the Plaintiffs' notice of rescission.

<u>15 USC § 1635</u>, Right of rescission as to certain transactions, states in pertinent part:

"SUBCHAPTER I - CONSUMER CREDIT COST DISCLOSURE
Part B - Credit Transactions
(a) Disclosure of obligor's right to rescind
Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. <u>The creditor shall clearly and conspicuously disclose,</u> in accordance with regulations of the Board, to any obligor in a transaction subject to this section <u>the rights of the obligor under this section</u>. <u>The creditor shall also provide</u>, in accordance with regulations of the Board, <u>appropriate forms</u> for the obligor to exercise his right to rescind any transaction subject to this section.
(b) Return of money or property following rescission
When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. <u>Within 20 days after receipt of a notice of rescission</u>, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 12

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

(c) Rebuttable presumption of delivery of required disclosures

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section <u>does no more than create a rebuttable presumption of delivery thereof</u>.

…

(f) Time limit for exercise of right

An obligor's right of rescission shall expire <u>three years after the date of consummation</u> of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor…. "
<u>*Emphasis added.*</u>

## 1.      Claim that GMAC, as the Assignee, is not liable for facial Defects of the Loan Documents.

<u>a.      Itemized Amount Financed Disclosure.</u>

The Plaintiffs did not receive itemized amount financed disclosures as required under 12 CFR §226.18, thus supporting another facial violation under TILA that.  GMAC needs to point to a "violation for which such action or proceeding is brought is apparent on the face of the disclosure statement", <u>15 USC § 1641(c)</u>.  The Plaintiffs have provided evidence of a facial violation under 12 CFR §226.18.

<u>b.      Annual Percentage Rate Disclosure.</u>

A similar facial violation is supported by the Plaintiffs' evidence for a violation of the Annual Percentage Rate (APR) on the Truth in Lending Disclosure Statement (TIL) is overstated by 0.2914%.

12 CFR 226.22 Determination of annual percentage rate, states impertinent part:

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 13

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

CHAPTER II--FEDERAL RESERVE SYSTEM

Subpart C--Closed-End Credit

(a) Accuracy of annual percentage rate. (1) The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made. The annual percentage rate shall be determined in accordance with either the actuarial method or the United States Rule method. Explanations, equations and instructions for determining the annual percentage rate in accordance with the actuarial method are set forth in appendix J to this regulation.\45d\

\45d\ An error in disclosure of the annual percentage rate or finance charge shall not, in itself, be considered a violation of this regulation if: (1) The error resulted from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor promptly discontinues use of that calculation tool for disclosure purposes and notifies the Board in writing of the error in the calculation tool.

(2) <u>As a general rule, the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point above or below the annual percentage rate</u> determined in accordance with paragraph (a)(1) of this section.

<u>*Emphasis added.*</u>

According to TJ Henderson's calculations, this Annual Percentage Rate is overstated by over two-fold the error permitted.

c.      <u>HOEPA Disclosure Violations.</u>

Apparently once the loan's finance charges are above 8%, another disclosure comes to play under <u>15 USC §1639</u> and <u>12 CFR 226.32</u>.  The calculation by TJ Henderson indicates that this is over the 8% mark indicated in <u>12 CFR 226.32(a)(i),(ii)</u>.

d.      <u>Disclosure of the Right to Cancel</u>

While it is true that GMAC is not liable for the fact that the Plaintiffs signed an acknowledgment that they supposedly received the proper number of complete right to cancel notices, when they in fact did not receive the requisite quantity and quality of such notices, <u>15 USC § 1641(a),</u> the inquiry does not stop here:

**2.      GMAC's Arguments on the Notice of Rescission Issues.**

a.      <u>Rebuttable Presumption and the Right to Rescission.</u>

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

"Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures" required under <u>15 USC § 1635</u> by a person to whom information, forms, and a statement is required to be given <u>does no </u>more than create a rebuttable presumption.  <u>15 USC § 1635(c)</u>.  The Plaintiffs assert that they in fact did not receive the appropriate quantity and quality of the notices of right to cancel as is required under <u>12 CFR §226.18(c)</u>.  GMAC needs to offer proof to the contrary, given that the written acknowledgment is not enough.

Under <u>15 USC § 1641(c)</u>, the Plaintiffs thus have the right to exercise their right to give a notice of rescission, even to an assignee.  GMAC's argument that the statute of limitations for giving notice of this rescission bars it, only supports Plaintiffs' rebuttal of having received proper notice of their right to cancel.

b.      <u>The Statute of Limitations for Exercising the Right of Rescission.</u>

Thus, GMAC argues that the statute of limitations ran:  The Plaintiff's have three years from the date of the closing on the mortgage to give a notice of rescission when "the information and forms required under this section or any other disclosures required under this part have not been delivered", <u>15 USC § 1635(f)</u>.  The Plaintiffs rebutted the presumption that they did receive the proper quantity and quality of notices to cancel, thus they had until November 18, 2005, to give notice of rescission.  They gave notice in March, 2005, with certified receipts admitted in evidence to prove the delivery (Plaintiffs' Exhibit C).

This is a "material disclosure" under footnote 48 of the Official Staff Commentary.

c.      <u>Failure to Respond to Notice of Rescission.</u>

Regardless of the fact that the Plaintiffs offered tender (Plaintiffs' Exhibit C), GMAC failed to respond not only within the allotted 20 days under 15 USC §1635(b) and 12 CFR 226.23(d)(2), (3), but GMAC never has responded.

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

Although GMAC claims that they did respond (GMAC's Exhibit H), their "response" does not have any letterhead.  This is important because when GMAC returned the first two money orders back to the Plaintiffs (Plaintiffs' Exhibit D), GMAC's letters that accompanied these money order have letterheads clearly printed on each (Plaintiffs' Exhibit F and G).  So this mounts a serious issue of authenticity and credibility as to GMAC's supposed timely response to the Plaintiffs' notice of rescission.

The reasons why Congress created this extraordinary remedy of rescission and decided to enforce it through a strict liability standard are best understood in the context of the Act's creation and the Congressional policy it serves.

The purpose of TILA is to enable consumers to intelligently shop for credit (15 USC §1601(a)).  The House of Representatives report accompanying TILA noted how important the use of credit has become in the United States: "Consumer credit has become an essential feature of the American way of life.  It permits families with secure and growing incomes to plan ahead and to enjoy fully and promptly the ownership of automobiles and modern household appliances. It finances higher education for many who otherwise could not afford it.  To families struck by serious illness or other financial setbacks, the opportunity to borrow eases the burden by spreading the payments over time." (H. Rep. No. 1040, 90th Cong., 1st Sess. 8-9, reprinted in 1968 U.S. Code Cong. & Admin. News 1965.)

In particular, TILA "was passed to aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing." (Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 248 (3d. Cir. 1980);  Shepeard v. Quality Siding & Window Factory, Inc., 730 F.Supp. 1295, 1299 (D.Del. 1990).  See also Mourning v. Family Publications Service, Inc., 411 U.S.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE – 16

*GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101*

356, 363-69, 93 S.Ct. 1652, 1657-60, 36 L.Ed.2d 318 (1973)).  It was thought that "through TILA, Congress [could] remedy the [sq]divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them.'"  Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3d. Cir. 1988).  "Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions." (Jackson v. Grant, 890 F.2d 118, 122 (9th Cir. 1989)).


**TILA Achieves its Remedial Goals by a System of Strict Liability**


To further this congressional policy TILA achieves its remedial goals by a system of *strict liability* in favor of consumers when mandated disclosures have not been made.  15 U.S.C. §1640(a) (emphasis added).  The standard applied is considered "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." (Shepeard v. Quality Siding & Window Factory, Inc., supra. at 1299).  This means that "technical or minor violations[1] of TILA, or Reg. Z, as well as major violations impose liability on the creditor and entitle the borrower to rescind [the loan]." (Smith v. Wells Fargo Credit Corp., 713 F.Supp. 354, 355 (D.Ariz. 1989)).[2]

---

[1] The error tolerance for finance charges is ten dollars (Regulation Z, §226.18(d).

[2] This rule is inviolate and is followed by courts in all jurisdictions.  See, e.g.,  Smith v. Fidelity Consumer Discount Co., 989 F.2d 896, 898 (3rd Cir. 1990)(The federal Truth in Lending Act (TILA) achieves its remedial goals by a system of strict liability in favor of consumers when mandated disclosures have not been made); Lewis v. Dodge, 620 F.Supp. 135, 138 (D. Conn. 1985); In re Porter, 961 F.2d 1066 (3rd Cir. 1992); Rowland (John M., Carol S.) v. Magna Millikin Bank of Decatur, N.A., 812 F.Supp. 875 (C.D. Ill. 1992) ("even technical violations will form the basis for liability"); New Maine Nat. Bank v. Gendron, 780 F.Supp. 52 (D. Me. 1992); Dixon v. S & S Loan Service of Waycross, Inc., 754 F.Supp. 1567 (S.D. Ga. 1990); Woolfolk v. Van Ru Credit Corp., 783 F.Supp. 724 (D. Conn. 1990) (same with Unfair Debt Collection Practices Act); Morris v. Lomas and Nettleton Co., 708 F.Supp. 1198 (D. Kan. 1989); Jenkins v. Landmark Mortg. Corp. of Virginia, 696 F.Supp. 1089 (W.D. Va. 1988); Laubach v. Fidelity Consumer Discount Co., 686 F.Supp. 504 (E.D. Pa. 1988); Searles v. Clarion Mortg. Co., 1987 WL 61932 (E.D. Pa.

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 17

*GEORGE A. KOLIN
ATTORNEY AT LAW
P.O. BOX 173
WASHOUGAL, WA 98671
tel/fax(360)835-8101*

The first circuit court of appeals has unequivocally stated that any violation of TILA, regardless of the technical nature of the violation, must result in a finding of liability against the lender. (Bizier v. Globe Financial Services, Inc., 654 F.2d 1, 3 (lst Cir. 1981)).  TILA is a remedial statute which is designed to balance the scales "thought to be weighed in favor of lenders," and is therefore to be liberally construed in favor of borrowers. *Id.* A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute, regardless of the nature of the violation or the creditor's intent.  (Thomka v. A.Z. Chevrolet Inc., 619 F.2d 246, 249-50 (3d Cir. 1980)).  Even if the borrower can demonstrate no actual damages, TILA's penalties are applied regardless of whether the borrower was misled or injured.  (See, Griggs v. Provident Consumer Discount Co., 680 F.2d 927, 932-33 (3d Cir.), vacated on other grounds, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)).

This strict compliance rule is what makes TILA so effective.  "This strict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements."  (In re Brown, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989)).

## E.    Fair Credit Reporting Act Claim

---

1987);  "Liability will flow from even minute deviations from requirements of the statute and Regulation Z." Dixon v. S & S Loan Service of Waycross, Inc., 754 F.Supp. 1567, 1570 (S.D. Ga. 1990); Shroder v. Suburban Coastal Corp., supra. at 1380;  Charles v. Krauss Co., Ltd., 572 F.2d 544 (5th Cir. 1978).Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984) ; Goldberg v. Delaware Olds, Inc., 670 F.Supp. 125 (D. Del. 1987); Curry v. Fidelity Consumer Discount Co., 656 F.Supp. 1129 (E.D. Pa. 1987); Laubach v. Fidelity Consumer Discount Co., 1986 WL 4464 (E.D. Pa. 1986); In re Wright, 133 B.R. 704 (E.D. Pa. 1991); Moore v. Mid-Penn Consumer Discount Co., 1991 WL 146241 (E.D. Pa. 1991); In re Marshall, 121 B.R. 814 (Bankr.C.D. Ill. 1990); In re Steinbrecher, 110 B.R. 155 (Bankr.E.D. Pa. 1990); Nichols v. Mid-Penn Consumer Discount Co., 1989 WL 46682 (E.D. Pa. 1989); In re McElvany, 98 B.R. 237 (Bankr.W.D. Pa. 1989); In re Johnson-Allen, 67 B.R. 968 (Bankr.E.D. Pa. 1986); In re Cervantes, 67 B.R. 816 (Bankr.E.D. Pa. 1986); In re McCausland, 63 B.R. 665, 55 U.S.L.W. 2214, 1 UCC Rep.Serv.2d 1372 (Bankr.E.D. Pa. 1986); In re Perry, 59 B.R. 947 (Bankr.E.D. Pa. 1986); In re Schultz, 58 B.R. 945 (Bankr,E.D. Pa. 1986); Solis v. Fidelity Consumer Discount Co., 58 B.R. 983 (E.D. Pa. 1986).

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 18

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

Expert TJ Henderson estimated that due to the breach by GMAC of the contract and the subsequent initiation of foreclosures and bankruptcy, the Plaintiffs' credit rating would have been harmed by as much as 5 points (Ref. Report Page 8 "Other Federal Violations").

While this may be true, the procedures outlined under 15 USC §1681s-2(b), which has been cited by GMAC in GMAC's Answer as an affirmative defense, appears to defeat this claim.

## F.      State Consumer Protection Act

The following statutes demonstrate the application of the CPA to violations of the Federal laws and regulations cited earlier:

RCW 19.86.020 Unfair competition, practices, declared unlawful:

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared *unlawful*." *Emphasis added.*

RCW 31.04.027 Violations of chapter:

"It is a violation of this chapter for a licensee, its officers, directors, employees, or independent contractors, or any other person subject to this chapter to:
    (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead any borrower, to defraud or mislead any lender, or to defraud or mislead any person;
    (2) Directly or indirectly engage in any unfair or deceptive practice toward any person;
    (3) Directly or indirectly obtain property by fraud or misrepresentation;
    (4) Solicit or enter into a contract with a borrower that provides in substance that the consumer loan company may earn a fee or commission through the consumer loan company's best efforts to obtain a loan even though no loan is actually obtained for the borrower;
    (5) Solicit, advertise, or enter into a contract for specific interest rates, points, or other financing terms unless the terms are actually available at the time of soliciting, advertising, or contracting;
    (6) Fail to make disclosures to loan applicants as required by RCW 31.04.102 and any other applicable state or federal law;
    (7) Make, in any manner, any false or deceptive statement or representation with regard to the rates, points, or other financing terms or conditions for a residential mortgage loan or engage in bait and switch advertising;
    (8) Negligently make any false statement or knowingly and willfully make any omission of material fact in connection with any reports filed with the department by a licensee or in connection with any investigation conducted by the department;

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*

(9) Make any payment, directly or indirectly, to any appraiser of a property, for the purposes of influencing the independent judgment of the appraiser with respect to the value of the property; or

(10) Advertise any rate of interest without conspicuously disclosing the annual percentage rate implied by that rate of interest *or otherwise fail to comply with any requirement of the truth in lending act, 15 U.S.C. Sec. 1601 and regulation Z, 12 C.F.R. Sec. 226, the real estate settlement procedures act, 12 U.S.C. Sec. 2601 and regulation X, 24 C.F.R. Sec. 3500, or the equal credit opportunity act, 15 U.S.C. Sec. 1691 and regulation B, Sec. 202.9, 202.11, and 202.12, or any other applicable federal statute, as now or hereafter amended, in any advertising of residential mortgage loans or any other consumer loan company activity*." <u>*Emphasis added.*</u>

RCW 31.04.025 Application of chapter:

"Each loan made to a resident of this state by a licensee is subject to the authority and restrictions of this chapter, unless such loan is made under the authority of another license issued pursuant to a law of this state or under other authority of a law of this state. This chapter shall not apply to any person doing business under and as permitted by any law of this state or of the United States relating to banks, savings banks, trust companies, savings and loan or building and loan associations, or credit unions, nor to any pawnbroking business lawfully transacted under and as permitted by any law of this state regulating pawnbrokers, nor to any loan of credit made pursuant to a credit card plan."

RCW 31.04.208 Application of consumer protection act:

"The legislature finds that the practices governed by this chapter are matters vitally affecting the *public interest* for the purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this chapter is not reasonable in relation to the development and preservation of business and is *an unfair and deceptive act or practice* and unfair method of competition in the *conduct of trade or commerce* in violation of RCW 19.86.020. Remedies provided by chapter 19.86 RCW are cumulative and not exclusive." <u>*Emphasis added.*</u>

Thus, if GMAC violated any provisions of TILA, HOEPA, Regulation Z, or any other Federal law or regulation cited in <u>RCW   31.04.027(10)</u>, then such violations constitute a violation of the Washington State Consumer Protection Act, <u>RCW 19.86.020</u>.

Being that such conduct has been declared *unlawful* under

The Washington State Supreme Court in <u>HANGMAN RIDGE TRAINING STABLES, INC. v. SAFECO TITLE INS. CO.</u>, <u>105 </u>Wn.2d 778, 784-85, 719 P.2d 531 (1986), outlined a 5-part test which a private citizen must satisfy in order to prevail in an action brought under RCW 19.86.090:

"Under this test, a private citizen must show (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act."

Because <u>RCW 31.04.208</u> declares that any violation under Chapter <u>RCW 31.04</u> are declared a violation of <u>RCW 19.86.020</u>, the first Hangman Ridge element, an unfair or deceptive act or practice, is satisfied.  This is consistent with <u>Industrial Indem. Co. v. Kallevig</u>, 114 Wn.2d 907, 921, 792 P.2d 520 (1990):

"A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Citing* <u>Hangman Ridge</u> at 786.

Therefore a finding by this Court that the Plaintiffs have produced enough materially disputed facts supporting the violations of the Federal laws and regulations listed under <u>RCW 31.04.027(10)</u> will necessarily lead to the satisfaction of the first <u>Hangman Ridge</u> element.

GMAC challenges only the sufficiency of the first Hangman Ridge element, and makes a peripheral allegation that the remaining four <u>Hangman Ridge</u> elements are not satisfied.  This should not be deemed adequate to force the Plaintiffs into establishing material evidence that these four elements do exist.

As to the first two elements, Hangman Ridge at 785-6 states:

"these two elements may be established by a showing that the alleged act constitutes a per se unfair trade practice. A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated."

<u>RCW 31.04.208</u> explicitly says:

"Any violation of this chapter is not reasonable in relation to the development and preservation of business and *is an unfair and deceptive act or practice* and unfair method of competition *in the conduct of trade or commerce ….*" *Emphasis added*.

So element (2) is satisfied, if this Court finds a violation of any of the Federal laws and regulations listed under <u>RCW   31.04.027(10)</u>.

As to <u>Hangman Ridge</u> element (3):   <u>RCW 31.04.208</u> again satisfies this element as it declares:

"The legislature finds that the practices governed by this chapter are matters vitally *affecting the public interest* for the purpose of applying the consumer protection act, chapter 19.86 RCW." <u>*Emphasis added*</u>.

<u>Hangman Ridge</u> Elements (4) and (5) will be proven if this Court finds a violation of any of the Federal laws and regulations listed under <u>RCW   31.04.027(10)</u>.

Once all 5 elements are established, the Plaintiffs are entitled to seek damages pursuant to <u>RCW 19.86.090</u>.  <u>RCW 31.04.208</u>.

## V.  CONCLUSION

Plaintiffs have demonstrated through the pleadings, affidavits, and exhibits, that genuine issues of material fact exist to warrant a trial on the merits for almost all of their claims.

Respectfully Submitted February 25, 2008.

<u>/s/ George A. Kolin</u>
George A. Kolin, WSBA #22529
Attorney for Plaintiffs

PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMAMRY JUDGMENT
PAGE - 22

*GEORGE A. KOLIN*
*ATTORNEY AT LAW*
*P.O. BOX 173*
*WASHOUGAL, WA 98671*
*tel/fax(360)835-8101*