HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY S. and CAROL HENDERSON,

        Plaintiffs,

    v.

GMAC MORTGAGE CORPORATION; and
FIRST MORTGAGE LOAN SERVICING,

        Defendants.

Case No. C05-5781RBL

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' MOTION TO
EXCLUDE AND ORDER GRANTING
DEFENDANTS' MOTION FOR LEAVE
TO SUPPLEMENT ITS MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

       This matter comes before the Court on Defendants' Motion for Summary Judgment, Motion to Exclude and Motion for Leave to Supplement its Summary Judgment Motion. (Dkt. #'s 22, 33, 48). Plaintiffs claim that Defendant GMAC Mortgage violated the Fair Credit Reporting Act ("FCRA"), the Washington Consumer Protection Act ("WCPA"), and the Truth in Lending Act ("TILA") in connection with their loan and their default under its terms. In addition, the Plaintiffs contend that Defendants committed breach of contract, illegal foreclosure and negligently caused them emotional distress. Defendants seek summary dismissal of Plaintiffs' claims, arguing there are no genuine issues of material fact and that the claims fail as a matter of law.

       The Defendants also move to exclude the affidavit and report of the Plaintiffs' expert, T.J. Henderson. (Dkt. #33). The Defendants contend that T.J. Henderson does not qualify as an expert and his testimony does not satisfy the requirements of Fed. R. Civ. P. 56(e); T.J. Henderson's affidavit and report are conclusory and his testimony is not necessary for examining potential TILA violations. Defendants seek a ruling to strike T.J.

1     Henderson's affidavit and report before the Court considers the merits of the summary judgment motion.

2         Having reviewed the parties' submissions, the Court hereby GRANTS the Defendants' Motion for

3     Summary Judgment, Motion to Exclude, and Motion for Leave to Supplement its Summary Judgment Motion

4     and, DISMISSES this case.  The reasons are set forth below.

5                            **II. BACKGROUND**

6         The following alleged facts are set forth in a light most favorable to the non-moving party:

7         In November 2002, the Hendersons refinanced their home loan with Greater Acceptance Mortgage

8     Corporation.  On November 18, 2002, the Plaintiffs entered into a loan agreement with Greater Acceptance

9     and executed a Promissory Note with the principal balance of $70,000.  The Plaintiffs agreed to repay Greater

10    Acceptance or its assignees the amount owed under the Note.  The debt was secured by a Deed of Trust which

11    was recorded in Skamania County, Washington.

12        On November 25, 2002, Greater Mortgage and First Mortgage Loan Servicing (collectively, "GM

13    FMLS") purchased the Plaintiffs' loan from Greater Acceptance.  Before GM FMLS completed this

14    transaction, it reviewed the Plaintiffs' loan documents and the Truth in Lending disclosures, which they found

15    to be complete and accurate.

16        The Plaintiffs made timely payments for approximately eighteen months.  By August 2004, the Plaintiffs

17    admit they encountered some financial problems and became delinquent on several payments.  *Complaint*, p.

18    4 (Dkt. #1).  The Plaintiffs fell two months behind in their mortgage payments.  The Plaintiffs called First

19    Mortgage Loan Servicing on September 14, 2004.[1]  According to the Plaintiffs, they agreed to pay the past

20    due amount within 30 days.[2]  *Id*.  At that point, the Plaintiffs had not made their August or September

21

22

_____

23    [1] The events surrounding the September 14, 2004 phone call are somewhat unclear.  According to the

24    Plaintiffs, they called First Mortgage Loan Servicing.  The Defendants, however, provide call records and notes indicating that *they* called the Plaintiffs on September 14, 2004, to inquire about the past due amounts.  *Motion*

25    *for Summary Judgment*, p. 3 (Dkt. #22).  The Court must, of course, view the evidence in the light most favorable to the non-moving party.

26    [2] Mr. Henderson promised to pay within 30 days.  *Complaint*, p. 4 (Dkt. #1).  Mr. Henderson, however,

27    indicated in his answers to Defendants' discovery and in his deposition testimony that he would make up the payments within three weeks from the date of the call.  Exh. B to Declaration of Erin Stines (Dkt. #24).  The

28    Defendants have contemporaneous notes of the September 14, 2004 call which states Mr. Henderson promised to bring the amount current within one week.  *Motion*, p. 3 (Dkt. #22).  The Defendants seem to be correct but the Court must view the evidence in the light most favorable to the non-moving party.

payments and their October payment was to be due on October 1, 2004.[3]  GM FMLS acknowledged Plaintiffs'

promise and included a note in the Plaintiffs' file that they intended to pay on September 24, 2004.

When GM FMLS did not receive payment by September 24, 2004, it marked the Plaintiffs' file that the

promise to pay was broken. *Affidavit of Scott Zeitz*, p. 3.  (Dkt. #23).  On October 5, 2004, when GM FMLS

received no payments and were unable to contact the Plaintiffs, it restricted the Plaintiffs' account; the Plaintiffs

had to pay the total amount due immediately or make payment arrangements.

On or about October 18, 2004, the Plaintiffs sent one payment to GM FMLS.  They mailed a second

payment on October 19, 2004.  Each payment was equal to one monthly payment.  GM FMLS admits that it

received the two payments; however, neither payment was sufficient to bring the account current, so both

checks were returned to the Hendersons on October 22, 2004.  On October 23, 2004, the Plaintiffs claim they

intended to send the third and final payment, but they received a letter in the mail from GM FMLS with the

two returned checks.

GM FMLS claims it attempted to make contact with the Plaintiffs for several weeks.  The last date GM

FMLS attempted to contact the Hendersons directly was December 15, 2004.  GM FMLS left a message on

the Plaintiffs' answering machine.  Mr. Henderson claims that he did not receive any phone calls from GM

FMLS, which the Court must accept as true for this summary judgment motion.

In April 2005, GM FMLS initiated foreclosure proceedings.  A foreclosure sale date was set for April

29, 2005.   On April 4, 2005, GM FMLS received a letter from the Plaintiffs, asking to "rescind the

transaction." *Id.*  GM FMLS responded on April 6, 2005, stating that the Plaintiffs' right to rescind had expired

on November 21, 2002.  Two days before the scheduled foreclosure sale, the Plaintiffs filed for bankruptcy.

At that point, GM FMLS stopped the proceedings.  GM FMLS never foreclosed on the Plaintiffs' property.


On October 13, 2005, the Plaintiffs filed this lawsuit in Skamania County Superior Court.  The case

was removed to this Court on December 2, 2005.  The Plaintiffs assert a number of claims including 1) breach

of contract; 2) emotional distress; 3) illegal foreclosure; 4) violations of the Truth in Lending Act; 5) violations

of the Fair Credit Reporting Act; and, 6) violations of the Washington Consumer Protection Act.

On October 27, 2006, this Court stayed the proceedings due to the Plaintiffs' bankruptcy.  (Dkt. #12)

---

[3]The Plaintiffs did not make their October payment and fell three months behind on their account.

ORDER
Page - 3

On November 6, 2006, the bankruptcy court entered an Order allowing the bankruptcy trustee to abandon any interest in the subject property.  On November 30, 2006, this Court entered an Order lifting the stay.

### III.  Defendants' Motion for Leave to Supplement its Summary Judgment Motion

After the Defendants filed its Motion for Summary Judgment and Motion to Exclude, it also filed a Motion for Leave to Supplement its motion for summary judgment.  (Dkt. #48).  It seeks to supplement its motion, arguing that the TILA claims are barred by a one-year statute of limitations.  The Plaintiffs contend that because this case is an action to collect a debt, it is subject to a three-year statute of limitations.  *See* 15 U.S.C. § 1640(e).  This Court is not persuaded by the Plaintiffs' argument because the Defendants are not seeking to collect the debt, rather they are defending this breach of contract lawsuit.  Plaintiffs' TILA claims relate not to debt collection, but to the circumstances surrounding the creation of a debt in the first place.  The Court hereby GRANTS the Defendants' Motion and will consider the Defendants additional argument.

### IV.  Defendants' Motion to Exclude

**A.    Standard for Use of Expert Testimony or Other Evidence in Support of or in Opposition to a Motion for Summary Judgment**

Fed. R. Civ. P. 56(e) imposes the following requirements on evidence that is submitted in support of or in opposition to a motion for summary judgment: "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters therein."  Fed. R. Civ. P. 56(e) (emphasis added); *see also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2738 at pp. 470-73 (1983).

**B.    T.J. Henderson's Affidavit Should Be Excluded**

T.J. Henderson's affidavit should not be considered in opposition to this motion for three reasons.  First, Mr. Henderson's background and experience are not sufficient to qualify him as an expert.  He claims that he practices law in certain county courts in Washington.  He is not a lawyer, has not attended law school, and is not licensed to practice law in any state.  While he claims to have attended seminars and workshop, he does not provide any specific information regarding the types of seminars or workshops he has attended.  Moreover, he does not provide any evidence to show that he is uniquely qualified as a mortgage auditor.

Second, Mr. Henderson's affidavit includes unsupported conclusions without factual support.  For example, he concludes "the originating lender in this loan was nothing more than a broker/warehouse lender for [GM FMLS]." *Affidavit of T.J. Henderson*, p. 3 (Dkt. #30). Mr. Henderson does not provide any detail on how he arrived at this conclusion, let alone define what is a "broker/warehouse lender."  Further, he does not claim that he is familiar with the standard practices in the industry or whether these practices were met here. Put simply, Mr. Henderson's affidavit and report repeat the Plaintiffs' legal arguments, which are properly made by an attorney and not an expert.

Third, Mr. Henderson's testimony should only be considered if the factual issues are ones which jurors would not ordinarily be able to determine without assistance. *See* Fed. R. Evid. 702 . In this case neither the Court nor the jury requires assistance to sift through mortgage documents and to calculate finance charges and APR rates.[4]

Based on the foregoing, the Court hereby GRANTS the Defendants' Motion to Exclude.  T.J. Henderson's affidavit and report will not be considered in opposition to summary judgment motion.

## V.  Defendants' Motion for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  "The mere

---

[4]The Plaintiffs include in their Supplemental Response to this Motion a Memorandum of Decision of Motion to Exclude or Limit Expert Testimony published in the United States District Court, District of Maine. (Dkt. #43).  Although the Plaintiffs attempt to use this memorandum as evidence that T.J. Henderson's affidavit should be considered for this motion, the ruling actually undermines the Plaintiffs' argument.  The court in Maine permitted Mr. Henderson to testify in a limited capacity as to the TILA framework and compliance requirements.  Mr. Henderson, however, does not employ that strategy when writing his affidavit for this Motion.  Instead, he points out what the claims are without providing the appropriate TILA framework, industry standard, or regulatory compliance.

ORDER
Page - 5

existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

**B.    The Plaintiffs Did Not Have A Contract With GM FMLS For Repayment**

The Plaintiffs assert that the payment arrangement made during that phone conversation formed a unilateral contract. *Memorandum in Response to Defendants' Motion for Summary Judgment*, pp. 4-5 (Dkt. #31).  The Plaintiffs also contend that a new contract was formed on October 12, 2004.  They provide no evidence that the parties entered into an agreement on this date.  Moreover, the Plaintiffs do not provide any evidence that the call from GM FMLS was a new contract rather than a collection call.

A plaintiff in a contract action mut prove the existence of a valid contract between the parties, a breach of contract, and resulting damage. *Northwest Independent Forest Mfrs. v. Department of Labor & Industries*, 78 Wash. App. 707, 712, 899 P.2d 6 (1995).  The party asserting a breach of contract action has the burden of proving the existence of each essential element. *Johnson v. Nasi*, 50 Wash.2d 87, 91 309 P.2d 380 (1957).

The fact that Plaintiffs in this case made a payment arrangement with GM FMLS to repay delinquent payments does not create a new contract.  The Plaintiffs had a prior contractual obligation to pay their mortgage on a monthly basis.  The Promissory Note that the Plaintiffs signed clearly explains the terms of the mortgage loan:

> I will pay principal and interest by making payments every month . . . will make monthly payment on the 1st day of each month . . . [and] will make these payments every month until I have paid all of the principal and interest . . . If I do not pay the full amount of each monthly payment on the date it is due, I will be in default . . . If I am in default, [GM FMLS] may send me a written notice telling me that if I do not pay the overdue amount by a certain date, [GM FMLS] may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount."

Exh. A of *Affidavit of Zeitz* (Dkt. #23).  The terms on the contract are clear: the Plaintiffs must make timely mortgage payments and failure to do so will result in default.

Under the facts alleged by the Plaintiffs, the argument that the parties created some sort of enforceable oral modification to the written loan agreement is not supportable.  The Deed of Trust prohibits oral modification of the mortgage contract: "[o]ral agreements or oral commitments to loan money, extend credit, or to forebear from enforcing repayment of a debt are not enforceable under Washington law."  *Id*.

The Court hereby GRANTS the Defendants' Motion for Summary Judgment and DISMISSES the Plaintiffs' breach of contract claim.

## C.    The Plaintiffs Do Not Provide Sufficient Evidence for Their Emotional Distress Claim

The Plaintiffs claim that Mr. Henderson suffered a great deal of physical and emotional distress as a result of the Defendants' "failure to resolve the outstanding loan and payment issues.".  They claim that the Defendants' failure is a "negligent breach of contract." [Complaint at Paragraphs 8.2-8.4, Dkt. #1] In support of this claim, Mr. Henderson claims that he was admitted to the hospital for stomach pains and was prescribed medications for an ulcer.

As a threshold matter, emotional distress damages are not permitted under contract law.  *Gaglidari v. Denny's Restaurants, Inc*., 117 Wash.2d 426, 443, 815 P.2d 1362 (1991).   Such damages are available in other limited circumstances, which are not applicable here.

 The elements of a negligent infliction of emotional distress claim are 1) the defendant engaged in negligent conduct; 2) the plaintiff suffered serious emotional distress; 3) the defendant's negligent conduct was the cause of the plaintiff's serious emotional distress. *See Hegel v. McMahon*, 136 Wash.2d 122, 135, 960 P.2d 424 (1988) (plaintiff came upon scene of accident injuring family member as the result of defendants' negligence); *Hunsley v. Girard,* 87 Wash.2d 424, 553 P.2d 1096 (1976).  Further, in order to demonstrate that a plaintiff suffered emotional distress, a plaintiff must show an "objective symptomology" that is susceptible

1    to a medical diagnosis. *Hegel*, 136 Wash.2d at 133.

2        The Plaintiffs have not shown that the defendants acted negligently outside their allegation of breach

3    of contract.  Even if they had, they have not sufficiently tied any alleged objective symptomology to the

4    conduct of the Defendants.  The Defendants provide portions of Mr. Henderson's medical records from

5    February 2007 that demonstrate his symptoms have been "recurrent over many years" and "[m]ost GI

6    disturbances . . . have plagued him since childhood."  Exh. B to *Declaration of Erin Stines* (Dkt. #24)  The

7    Plaintiffs have not demonstrated that Mr. Henderson suffered new, serious emotional distress, as a result of

8    the foreclosure proceedings.

9

10       The Court hereby GRANTS the Defendants' Motion for Summary Judgment and DISMISSES the

11   Plaintiffs' emotional distress claims.

12

13   **D.    The Plaintiffs' Illegal Foreclosure Claim Fails**

14

15       The rules governing foreclosure procedures are contained in the Deed of Trust Act, RCW 61.24 *et seq.*

16   The Act provides several safeguards to borrowers to ensure that the nonjudicial foreclosure process is fair to

17   borrowers.  *Cox v. Helenius*, 103 Wash.2d 383, 387, 693 P.2d 683 (1985).  For example, before a lender can

18   initiate foreclosure, a borrower must default on his mortgage.  RCW 61.24.030(3).  The trustee can begin the

19   foreclosure process only after giving 30-days notice and the borrower an opportunity to cure.  RCW 61.

20   24.030(6).

21

22       The Plaintiffs' claim for illegal foreclosure fails because 1) no foreclosure ever occurred and 2) GM

23   FMLS had the legal right to pursue foreclosure, because the Plaintiffs admittedly defaulted on their mortgage

24   obligations, by falling three months behind in their payments.  More importantly, GM FMLS never completed

25   the foreclosure proceedings because the Plaintiffs filed for bankruptcy.  The Court hereby GRANTS the

26   Defendants' Motion for Summary Judgement and DISMISSES the Plaintiffs' claim for illegal foreclosure.

27

28

**E.     The Plaintiffs' TILA Claims**

The Plaintiffs contend that several TILA violations are apparent on the face of the disclosure statement and other documents.  *See* 15 U.S.C. § 1641(a).  In the mortgage context, TILA requires five material disclosures: annual percentage rate ("APR"), the finance charge, the amount financed, the total payments, and the payment schedule.  12 C.F.R. § 226.23.

The Plaintiffs oppose this Motion with an affidavit and expert report from T.J. Henderson, an "Auditor for Consumer Guardian, Co3m and Advocates."  The Defendants claim that this evidence should not be considered because T.J. Henderson does not qualify as an expert.  *See Motion to Exclude* (Dkt. #33).  Based on the Court's ruling on the Motion to Exclude, *supra* pp. 4-5, T.J. Henderson's affidavit and expert report are not considered in opposition to the summary judgment motion.  Additionally, even if the Court were to consider this "evidence," it does not alter the legal deficiencies in the Plaintiffs' arguments.

1.     Notice of Right to Cancel

The Plaintiffs contend that they got only one copy of the Notice of Right to Cancel and the one copy they did receive did not have a date written on it.  In addition, Carol Henderson claims she did not receive her own copy. *Response*, p. 9 (Dkt. #31).  The Plaintiffs signed a copy of the Notice of Right to Cancel on November 18, 2002, and in doing so, acknowledged that they had received two copies of the Notice.  *See Deposition of Carol Henderson* at p. 39, lines 18-21 (conceding that she signed all the paperwork to get the loan); *Deposition of Tom Henderson* at p. 41-2, lines 10-2 (verifying that he signed the Notice of Right to Cancel).  Further, under 15 U.S.C. § 1641(b), "written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this title shall be conclusive proof of the delivery thereof . . .." 15 U.S.C. § 1641 (emphasis added).  Because the Plaintiffs signed the Notice of Right to Cancel and a TILA

ORDER
Page - 9

disclosure, their signatures serve as proof of delivery of these documents[5].  Their claim to the contrary therefore fails and this claim is DISMISSED.

### 2.     The APR, Amount Financed, and HOEPA Disclosures

The Hendersons make three claims that are barred by the applicable one year statute of limitations: 1) the APR on the TIL Disclosure was overstated by 0.2914%; 2) the amount financed is understated by $517.72; and 3) they did not each receive a copy of the Home Ownership Equity Protection Act ("HOEPA") disclosures.  The TILA statute of limitations provides that, "[a]ny action under this section may be brought . . . within one-year of the occurrence of the violation." 15 U.S.C. § 1640(e).  The statute of limitations begins to run from the date on which the parties consummated the loan.  *Id*.  The Plaintiffs completed the loan transaction on November 18, 2002.  The Plaintiff did not file their lawsuit until October 14, 2005, nearly three years after they completed the mortgage transaction.  Because they failed to file a lawsuit by November 18, these claims are barred by the statute of limitations.

### 3.     The Notice of Rescission

The Plaintiffs claim they were entitled to rescind on the loan because they sent a Notice of Rescission to GM FMLS on March 30, 2005.  *Response*, p. 9 (Dkt. #31).  In addition, they claim that because they received improper disclosures, the Plaintiffs had three years from the date of the loan closing to rescind the loan.  A borrower generally has until midnight of the third business day following the consummation of the transaction or delivery of the rescission forms and material disclosures to rescind a loan. 15 U.S.C. § 1635(a).  If a borrower receives improper disclosures, he has three years from the date of the closing of the loan to rescind the loan. 15 U.S.C. § 1635(f).  When a borrower rescinds the transaction, he must notify the creditor

---

[5]Plaintiffs seek to supplement their Response [Dkt. # 55] to demonstrate that they received only one copy of various TILA-required disclosures.  The request is GRANTED, but the documents do not change the result of this analysis.  There is simply no support for the claim that a technical failure to provide multiple copies of a document excuses a borrower from his end of the bargain.

ORDER
Page - 10

1   of his intent to do so, provide the lender with the appropriate forms (namely the Notice of Rescission), and

2   return any money or property within 20-days.  15 U.S.C. §§ 1635(a)-(b).

3
4          The Plaintiffs' claim must fail for two reasons.  First, as mentioned above, the Plaintiffs do not establish

5   that the disclosures were defective.  Because the Plaintiffs completed the loan transaction on November 18,

6   2002, they had until midnight November 21, 2002 to rescind.  The Plaintiffs attempted to rescind nearly two

7   and a half years after completing the loan transaction.  Second, even if the Plaintiffs are entitled to rescind, they

8   were required to tender the total amount of the mortgage principal and interest.  *See Morta v. Korea Ins.*

9   *Corp.*, 840 F.2d 1452, 1455 (9th Cir. 1988).  They did not tender any money.  In fact, they do not provide any

10  evidence to suggest that they had the a financial capacity to return the funds in April 2005, especially given

11
12  that they filed for bankruptcy shortly before foreclosure on their home.

13
14         The Court hereby GRANTS the Defendants' Motion for Summary Judgment and hereby DISMISSES

15  the Plaintiffs' TILA Claims.

16  **F.      The Fair Credit Reporting Act: 15 U.S.C § 1681**

17         The Plaintiffs claim that GM FMLS reported negative information to credit reporting agencies.  Under

18  the FCRA, the duties of a furnisher of information are set forth in 15 U.S.C. § 1681s-2.  The FCRA imposes

19  two duties on furnishers of information: 1) report accurate information and 2) correct inaccurate information.

20
21  "The purpose of the FCRA is to assure consumers that reporting agencies use reasonable procedures for

22  collecting, using, and disseminating information." 15 U.S.C. § 1681(b).  A furnisher of credit who willfully or

23  negligently reports inaccurate information to credit agencies is subject to civil liability.  15 U.S.C. §§ 1681n,

24  o.  The claim must fail.  Plaintiffs have not established that GM FMLS furnished inaccurate information to

25  credit reporting agencies. They rightfully furnished information to the credit reporting agencies after the

26
27  Plaintiffs fell three months behind in their monthly mortgage payments.  The Court therefore GRANTS the

28  Defendants' Motion for Summary Judgment and DISMISSES the Plaintiff's FCRA claims.

**G.      Washington Consumer Protection Act**

The Plaintiffs allege that the GM FMLS violated Washington's Consumer Protection Act by engaging in unfair business practices.[6]  To prove a violation of the CPA, a party must show: 1) an unfair or deceptive act; 2) the act occurred in the conduct of trade or commerce; 3) the act has an impact on the public interest; 4) injury to the claimant; and, 5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986).  The Plaintiffs' TILA and FCRA claims fail, for the reasons discussed above. Plaintiffs cannot satisfy the first element of a CPA violation because no unfair or deceptive act or practice occurred.  The Court hereby GRANTS the Defendants' Motion for Summary Judgment and DISMISSES the Plaintiffs' claims under the Washington Consumer Protection Act.

**VI.  CONCLUSION**

Based on the foregoing reasons, the Court GRANTS Defendants' Motion for Leave to Supplement its Motion for Summary Judgment, Motion to Exclude and Motion for Summary Judgment (Dkt. #'s 22, 33, 48) and DISMISSES this case.

IT IS SO ORDERED.

DATED this 10th day of April, 2008.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[6]For the first time in this lawsuit, the Plaintiffs now also allege violations of the Washington Consumer Loan Act, RCW 31.04 *et seq.*  The Court will not rule on these claims because they were not included in the Complaint.  In addition, the Court will not allow the Plaintiffs to amend the Complaint because of prejudice to the Defendants.  The trial is scheduled for May 5, 2008 and the discovery cutoff has passed.

ORDER
Page - 12